IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IRVIN HANNIS CATLETT, Jr. #50916-037 *
  Plaintiff,
       v.                                 *   CIVIL ACTION NO. PJM-11-162

COUNTY OF WORCESTER              *
SGT. PHILLIP FORT
  Defendants                          *
                                      ***

## **MEMORANDUM OPINION**

On January 8, 2011, Plaintiff Irvin Catlett, Jr., ("Catlett") filed his self-represented civil rights Complaint[1] against the State of Maryland ("the State"), County of Worcester ("the County"), Maryland State Police Sergeant Phillip Fort ("Fort") and Assistant State's Attorney Joel Todd ("ASA Todd"). The Complaint, which was not the model of clarity, included § 1983 claims against each of the Defendants alleging violations of Catlett's Fourth and Sixth Amendment rights. Essentially, Catlett's claims related to criminal charges brought against him by Sergeant Fort in Worcester County. ECF No. 1. Upon review of the Complaint, the Court, *sua sponte,* dismissed the claims against the State and ASA Todd on February 28, 2011, and, by letter, directed the remaining Defendants to answer the Complaint. ECF No. 3.

The Court now examines a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 10) filed by Fort; a Motion to Dismiss filed by the County (ECF No. 17); Catlett's opposition responses (ECF Nos. 14 and 25), and Fort's reply thereto. ECF No.

---

[1] At the time of filing, Catlett was serving a sentence in a Virginia prison. He is now incarcerated at the Federal Medical Center in Anyer, Massachusetts, where he is serving a 210-month sentence for conspiracy to default, aiding and assisting in the preparation of false tax documents, and related charges imposed in this Court in *United States v. Cattlett*, Crim. No. RWT-10-101 (D. Md.). He complains that Fort provided perjured testimony in the federal case to bolster the government's attempt to admit Catlett's prior convictions and prior bad acts by stating the Worcester County case was dismissed because the victim died, when in fact the victim died subsequent to dismissal by *nolle prosequi.* ECF No. 5 at 4; *see also US v. Catlett,* Criminal No. RWT-10-101, ECF No. 88. This allegation, although possibly relevant to the federal criminal case, has no import here.

28. No hearing is needed to resolve the case. *See* Local Rule 105.6 (D. Md. 2011).

**Background**

This 42 U.S.C. § 1983 prisoner civil rights action seeks compensatory and punitive damages, attorney fees, and other unspecified relief. In his Complaint as amended, Catlett states that Sergeant Phillip Fort initiated a malicious prosecution against him by lodging a charge against him in Worcester County, Maryland Circuit Court Case No. 24K-0000819. Plaintiff states that Fort lacked probable case and initiated the case, which was *nol prossed* in 2009, solely to "gain leverage" in prosecuting him for another Worcester County criminal matter, Case No. 23K-04-00090.[2] He complains that a detainer lodged in the case caused him to remain incarcerated longer on a conviction in the Commonwealth of Virginia and that Maryland authorities did not act on his request for prompt extradition, resulting in a violation of his Sixth Amendment right to a speedy trial. Catlett further complains that once released to Maryland, he was held at the Worcester County Detention Center, which lacked a proper law library, until he could post an "exorbitant" bail of $25,000.[3] ECF Nos. 1 and 5.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

---

[2] Criminal Action No. 23K-04-00090, filed January 23, 2003, remains pending. Examination of the docket reveals that the State is unaware of Catlett's whereabouts and has issued a bench warrant for his appearance. See http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=23K03000090&loc=49&detailLoc=K

[3] For reasons set forth in an Order of November 16, 2011, Catlett's claims concerning the conditions of confinement at the Worcester County Detention Center, lack of access to a law library, alleged deficiencies regarding the handling of detainers, a bench warrant and other documents relating to the criminal case, and imposition of the allegedly excessive bail are time-barred and at best fall well outside the parameter of his false arrest and malicious prosecution claims. These claims shall not be addressed here. *See* ECF No. 37 at 2-3.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

### Claims Against Fort

The Complaint raises claims of false arrest and malicious prosecution against Fort. On May 29, 2002, Maryland State Trooper First Class Fort was contacted by Terry Lee Kline, who sought to pursue a theft complaint against Catlett. ECF No. 10, Exhibit 1, Declaration of TFC Philip Fort, with attachments, at 1, ¶ 1. Kline alleged that Catlett had stolen thousands of dollars

3

from him. *Id*. Fort arranged to meet with Kline at his residence in Newark, Maryland. *Id*. Kline told Fort that he had met Catlett, who represented himself as a lawyer. On September 22, 2000, Catlett and a man named "Billy" whom Kline first encountered at the Approved Mortgage Capital, LLC came to his home. *Id*. at 1, ¶ 4. During the visit, Catlett informed Kline that he was an attorney and that for a $6,000 fee he would resolve Kline's debts. *Id*., Exhibit 2, at 1. Kline provided Catlett with a list of creditors and a check in the amount of $6,000. Exhibit 1 at 1, ¶ 4; Exhibit 2, at 3. On September 23, 2000, Catlett cashed the check but failed to pay off any of the debts. *Id*. Several days later, Kline again met with Catlett and Billy in Rehoboth Beach, Delaware. Exhibit 1 at 1, ¶ 4. Kline gave them a check for $10,000 to buy stock in a company, Motors Holding Company II, Inc., owned by Catlett. *Id*., Exhibit 2, at 4-22. He was then given a stock portfolio containing a breakdown of the income that he would receive annually for the next several years. Exhibit 1 at 2, ¶ 4; Exhibit 2 at 20.

Kline advised Fort that he had never received any income from the stock and that as a result of Catlett's failure to pay off the debts Kline had to retain an attorney and declare bankruptcy. Exhibit 1, at 2, ¶ 4-5. Maryland State Department of Assessments and Taxation records reveal that Motors Holding Company II Inc. was formed on September 27, 2000 and forfeited on October 7, 2000. Exhibit 1 at 2, ¶ 4; Exhibit 2, at 24-25. Fort then contacted the Maryland Attorney Grievance Commission to determine whether Catlett was an attorney. *Id*. at 2, ¶ 6. The Commission had no record of Mr. Catlett having been publicly disciplined. *Id*. Fort next contacted the Maryland Court of Appeals' Clerk's Office and was advised that Catlett was not an attorney. *Id*.

Kline alleged that Catlett had stolen a total of $23,000 from him[4] and provided Fort with several documents that he claimed showed the scheme. *Id.*, Exhibit 2, Documents Supplied to TFC Forts from Victim Terry Lee Kline regarding Irvin Catlett Claims. On December 22, 2002, Corporal Keen and Fort, after reading. Catlett his Miranda rights, interviewed him at the Seven Locks Detention Center in Rockville, Maryland. *Id.* at 2, ¶ 7. Catlett replied "I know my rights. I'm an attorney." *Id.* He also stated that in the early 70's he graduated from Harvard Law School. *Id.* Fort advised Catlett that he knew that he was not an attorney and was not licensed to practice in Maryland and that Fort did not believe that he had attended Harvard because he could not provide the year in which he purportedly graduated. *Id.* Catlett replied that all of his school records had been deleted for the safety of his family, due to problems that he had with the Mafia. *Id.* When questioned about Kline's allegations against him, Catlett acknowledged receipt of the $6,000, claiming the amount was payment for working out tax problems, and $10,000, claiming the amount was to buy stock in his company. *Id.* at 2, ¶ 8.

On March 4, 2003, Fort applied for charges against Catlett for theft by deception of the $6,000 received from Kline. *Id.* at 2, ¶ 9. On this same date, a judicial officer for the District Court of Maryland for Worcester County reviewed Fort's application and authorized the statement of charges and issued an arrest warrant, number D021072052, for Catlett. *Id.* at 3, ¶ 10. When an attempt was made to serve the warrant upon Catlett at the Montgomery County Detention Center; it was learned that he had been transferred to the Montgomery County Central Housing Facility. *Id.* A detainer was then issued for Catlett because the warrant could not be served on him in that facility. *Id.* On August 6, 2004, the warrant was served on Catlett and he was brought before a commissioner for the District Court of Maryland for Worcester County. *Id.*

---

[4] Some money was stolen in transactions that took place in Delaware; other transactions occurred in Maryland. ECF No. 10 at 2-3 and Exhibits 1 at 2 ¶ 4 and 2 at 20.

at 3, ¶ 11. On September 24, 2004, Catlett was released on $25,000 corporate bail.[5] Acting as his own attorney, Catlett filed a plethora of motions and appealed denials of same, even seeking certiorari in the United States Supreme Court. The matter was *nol prossed* on January 13, 2009.[6] *Id*.

The elements of a claim for malicious prosecution under Maryland law[7] are "(1) a prosecution initiated against the plaintiff without probable cause, (2) with malice, or with a motive other than to bring the offender to justice; and (3) termination of the prosecution in favor of the plaintiff."[8] *Green v. Brooks,* 125 Md.App. 349, 366-368, 725 A.2d 596, 605 - 606 (Md.App. 1999). "The conviction of the accused by a magistrate or trial court although reversed by an appellate tribunal, conclusively establishes the existence of probable cause, unless the conviction was obtained by fraud, perjury or other corrupt means." *Zablonsky v. Perkins*, 230 Md. 365, 368-69, 187 A. 2d 314, 369 (Md. 1963); *see also Quecedo v. DeVries*, 22 Md. App. 58, 70, 321 A. 2d 785, 791 (Md. App. 1974) (conviction on criminal charge is conclusive determination of the existence of probable cause); *but see Wilkes v. Young*, 28 F. 3d 1362, 1365 (4th Cir. 1994) (finding no Fourth Amendment violation where false statement was unnecessary to the magistrate's finding of probable cause).

Whether probable cause exists "always turns on two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that

---

[5] *See http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=23K04000819&loc=49&detailLoc=K*

[6] As noted earlier, the reason for the entry of a *nol pros*, including whether such dismissal was entered because the victim had died is not material to the outcome of this case.

[7] *See Goodwin v. Metts*, 885 F. 2d 157, 160, fn. 1 (4th Cir. 1989) (application of South Carolina law to malicious prosecution claim raised under 42 U.S.C. §1983); *Asuncion v. City of Gaithersburg*, 73 F. 3d 356, 1996 WL 1842 *2 (4th Cir. 1996) (unpublished) (application of Maryland law).

[8] The case against Catlett was *nol prossed*; arguably, Catlett satisfies the third element of a malicious prosecution claim.

conduct." *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992)). The Supreme Court has held that the "information supplied by the officer in the affidavit must 'be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true.'" *Gregg v. Richmond*, 2004 U.S. Dist. LEXIS 1850, 13-14 (D. Md. Feb. 11, 2004) (quoting *United States v. Simons*, 206 F.3d 392, 402 (4th Cir. 2000), quoting *Franks v. Delaware*, 438 U.S. 154, 165 (1978)). "To challenge such information successfully as an unlawful seizure, the detainee…must show that Defendants 'made the false statements either deliberately or with reckless disregard for its truth.'" *Gregg*, 2004 U.S. Dist. LEXIS at *13 (quoting *U.S. v. Simons*, 206 F.3d 392, 402 (2000)). The record fully supports a conclusion that Fort had probable cause to bring charges against Catlett based on the crime of theft by deception against Kline. As Catlett cannot satisfy the first element of proof , his claim of malicious prosecution fails as a matter of law.

Catlett's claim that he was wrongfully arrested and brought to Worcester County fares no better. When enacting 42 U.S.C. § 1983, Congress determined that gaps in federal civil rights acts should be filled by state law, as long as that law is not inconsistent with federal law. *See Burnett v. Grattan*, 468 U.S. 42, 47-48 (1984). Because no federal statute of limitations governs, federal courts routinely measure the timeliness of federal civil rights suits by state law. *See id*. at 49; *Chardon v. Fumero Soto*, 462 U.S. 650, 655-656 (1983); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 464 (1975). The tradition of borrowing analogous limitations statutes is premised on a congressional decision to defer to "the States judgment on the proper balance between the policies of repose and the substantive polices of enforcement embodied in the state cause of action." *Wilson v. Garcia*, 471 U.S. 261, 271 (1985). Maryland's general three-year statute of limitations for civil actions is most applicable to the case at bar. *See* Md. Code Ann., Cts. & Jud. Proc., § 5-101.

7

Federal law, however, governs the question of when a cause of action accrues. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007). Under the general rubric, the running of the statute of limitations begins when a plaintiff knows or has reason to know of his injury. *Id*. A claim for false arrest accrues on the date of initial appearance before a neutral magistrate. *See Wallace*, 549 U.S. at 387. Catlett was served with the arrest warrant and brought before a commissioner for Worcester County in August of 2004, where he posted bail on September 24, 2004. The Complaint was not filed until January 8, 2011, more than six years after the date the cause of action accrued.

Although unclear, it appears Catlett might be asserting that the limitations period did not begin to run until the criminal charges were dismissed. ECF No. 1 at 2, letter to the Clerk; *see also Heck v. Humphrey,* 512 U.S. 477 (1994).[9] The Supreme Court's decision in *Wallace*, however, governs this case. The Court made clear in that case that "[t]here can be no dispute that [plaintiff] could have filed suit as soon as the allegedly wrongful arrest occurred, subjecting him to the harm of involuntary detention, so the statute of limitations would normally commence to run from that date." *Wallace,* 549 U.S. at 388. If there is a pending criminal case as a result of the alleged false arrest, the civil suit for damages may be stayed so that the potential criminal conviction will not be impugned by a civil verdict in the plaintiff's favor. *Id*. at p. 394. If there is a resulting criminal conviction that would be impugned by the stayed civil suit, *Heck* would require dismissal of the civil suit at that time. *Id*. Under this analysis, any false arrest claim contained within the pleadings is time-barred.[10]

---

[9] In *Heck v. Humphrey*, the Supreme Court held that claims challenging the legality of a conviction are not cognizable in a 42 U.S.C. § 1983 action unless and until the conviction is reversed, expunged, invalidated, or impugned and complaints containing such claims must therefore be dismissed without prejudice. Catlett is not, however, seeking to challenge the validity of his conviction, as the charges against him were ultimately dismissed.

[10] To the extent the Complaint raises a claim of false imprisonment, that claim is also barred. "The test of legal justification, in the context of false arrest and false imprisonment, is judged by the principles applicable to the law of

8

## Claim Against Worcester County

Title 42 U.S.C. § 1983 authorizes a suit for damages against any individual "who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution." Catlett's claim against Worcester County is unclear; Defendant Fort is a member of the Maryland State Police, not the County police force or sheriff's office, and the judicial officers responsible for Catlett's prosecution are Maryland state officials. Plaintiff does not define his claim against Worcester County, much less plead and prove that he suffered a violation of his constitutional rights at the hands of County actors. *See Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir.1999) ("As there are no underlying constitutional violations by any individual, there can be no municipal liability."). His claims against the County are hereby dismissed.

## Conclusion

The claims raised against Defendant Worcester County shall be dismissed, and summary judgment granted in favor of Defendant Fort. A separate Order entering the rulings set out herein follows.

|  |  |
|---|---|
| November 29, 2011 | /s/<br>PETER J. MESSITTE<br>UNITED STATES DISTRICT JUDGE |

---

arrest." *Heron v. Strader*, 361 Md. 258, 264-265, 761 A.2d 56, 59 (Md. 2000). The date of accrual for false imprisonment is the date of arrest. *Id*.